J. Scott NICOL and Jody
Nicol, Plaintiffs,

v.

IMAGEMATRIX, INC.,
et al., Defendants.

Civ. A. No. 91–0396–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 30, 1991.

Mark Joseph Sterner, Drinker Biddle & Reath, Washington, D.C., for plaintiffs.

Scott A. Mills, McGovern, Noel, Falk, Pannone, Procaccini & O'Leary, Washington, D.C., for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

This case presents the question whether a husband, who claims his employer discharged him because of his wife's pregnancy, has standing to sue under Title VII, 42 U.S.C. § 2000e *et seq.*, as amended by the Pregnancy Discrimination Act (the "Act").[1]

### I. *Background*

Mr. and Mrs. Nicol worked for Imagematrix, Inc., as vice presidents from approximately April 1988 until their termination in November 1989. On October 3, 1989, the results of a blood test confirmed Mrs. Nicol's suspicion that she was pregnant. She promptly advised Mr. Eggleston, the president of Imagematrix, of this fact. Six weeks later, on November 15, 1989, Mr. Eggleston terminated Mrs. Nicol, citing declining sales in her department and a company cash flow problem. Later that same day, Mr. Eggleston discharged Mr. Nicol, citing the same cash flow problem. Mr. and Mrs. Nicol claim that Imagematrix, Inc. discharged them solely because of Mrs. Nicol's pregnancy.

On March 5, 1990, Mr. and Mrs. Nicol filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a right-to-sue letter to Mr. and Mrs. Nicol with respect to Mr. Nicol's claim, in addition to other claims, on December 14, 1990. Subsequently, Mr. and Mrs. Nicol filed suit on March 14, 1991. Mr. Nicol claims he has standing to sue under Title VII, as amended by the Pregnancy Discrimination Act, because he was discriminated against on the basis of his sex due to his wife's pregnancy. This matter is now before the Court on defendant's motion for partial summary judgment on the issue of Mr. Nicol's standing to sue.

### II. *Analysis*

■ Analysis of the standing issue properly begins with the words of Title VII that define who can sue for discriminatory discharge. Section 2000e–2(a)(1) states:

It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of *such individual's* race, color, religion, sex, or national origin.

---

1. Pub.L. No. 95–555, 92 Stat. 2076 (1978). Congress passed this Act to overrule the Supreme Court's reasoning and holding in *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). In *Gilbert,* the Court held that an employer's disability plan that provided compensation during periods of disability resulting from nonoccupational causes, but excluded disabilities arising from pregnancy, did not discriminate against female employees because of their sex. *Id.* at 136, 97 S.Ct. at 408. With the Pregnancy Discrimination Act, Congress simply made explicit what it thought had been implicit in Title VII from the beginning: discrimination on the basis of sex includes pregnancy. *See* 42 U.S.C. § 2000e(k).

42 U.S.C. § 2000e–2(a)(1) (emphasis added). Thus, Title VII, by its terms, confers standing to sue on persons who claim they were discharged because of their gender. Mr. Nicol fits this category. He claims his discharge was the result of discrimination on the basis of his sex.[2] More specifically, he argues that defendants terminated him for a reason that a female employee could never be terminated. A woman could never be terminated due to her employer's animus against a pregnant spouse because her spouse could not be pregnant. Therefore, defendants allegedly treated Mr. Nicol, a male employee, "in a manner which but for [his] sex would be different." *Los Angeles Dept. of Water & Power v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978). This alleged difference in treatment affords Mr. Nicol standing under Title VII. Whether Mr. Nicol can prove at trial that defendants were prejudiced against pregnant women and fired him because he was married to a pregnant woman is another matter.

■ Defendant's argument focuses not on Title VII's basic language, but on the expansion of that language as a result of the Pregnancy Discrimination Act. In that Act, Congress expanded the meaning of term "sex" to include pregnancy. The Act states in pertinent part: "The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions[.]" 42 U.S.C. § 2000e(k). Distilled to its essence, defendant's argument is that Mr. Nicol has no standing to sue for discriminatory discharge because he is not the pregnant employee. Put another way, defendants claim that the Act *limits* standing to a person

discriminated against on the basis of *such person's* pregnancy, childbirth, or related medical conditions. This argument founders on the statutory language itself. The first clause of the Act plainly states: "The terms 'because of sex' or 'on the basis of sex' include, *but are not limited to* on the basis of pregnancy, childbirth, or related medical conditions." § 2000e(k) (emphasis added). Although this Act expands Title VII's scope of prohibited discriminatory conduct to include an employee's pregnancy, the words "but are not limited to" in the Act indicate that the original prohibition in Title VII against discrimination on the basis of an employee's own sex still exists. *See Newport News Shipbuilding and Dry Dock Co. v. EEOC,* 462 U.S. 669, 684, 103 S.Ct. 2622, 2632, 77 L.Ed.2d 89 (1983) ("By making clear that an employer could not discriminate on the basis of an employee's pregnancy, Congress did not erase the original prohibition against discrimination on the basis of an employee's sex."). Therefore, under the terms of the Act itself, Mr. Nicol need not be the pregnant employee to have standing.

Defendants also point to the legislative history of the Pregnancy Discrimination Act, much of which indicates that the main purpose of the Act was to protect working women against all forms of employment discrimination based on sex. This alone, however, is not a basis on which defendants can argue that only pregnant, female employees have standing to sue under the Act. Congress may have focused on female employees when passing the Pregnancy Discrimination Act, but this emphasis "does not create a 'negative inference' limiting the scope of the [Pregnancy Discrimination] Act to the specific problem that

---

**2.** Mr. Nicol's first amended complaint states that defendants discriminated against him "on the basis of sex and pregnancy, by terminating his employment solely because of his wife's pregnancy." Defendants claim that this Court lacks subject matter jurisdiction to hear Mr. Nicol's claim because he did not state specifically in the complaint that he was discriminated on the basis of *his* sex. In accordance with federal notice-pleading, a plaintiff is not required to set out in detail the facts upon which he bases his claim. The allegations of a complaint should be construed favorably to the

pleader so that "substantial justice" can be done. Rule 8(f), Fed.R.Civ.P. As noted by the Supreme Court, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome." *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). *See also Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Following the established principle of construing complaints liberally, this Court reads Mr. Nicol's complaint as stating a Title VII claim for discrimination on the basis of his sex.

motivated its enactment." *Id.* at 679, 103 S.Ct. at 2629. Furthermore, "[p]roponents of the [Pregnancy Discrimination Act] stressed throughout the debates that Congress had always intended to protect *all* individuals from sex discrimination in employment—including but not limited to pregnant women workers." *Id.* at 680, 103 S.Ct. at 2630. Therefore, the legislative history points to no limitation in the Act that would preclude Mr. Nicol's standing.

Though not directly on point, *Newport News* squarely supports the result reached here. There, the Supreme Court held that an employer's health insurance plan providing female employees with pregnancy related benefits, but not providing the same benefits to the spouses of male employees, discriminated against the male employees in violation of Title VII, § 2000e(k). 462 U.S. at 684, 103 S.Ct. at 2631. In reaching this result, the Court explicitly recognized that male employees could recover under § 2000e(k) even though they could not become pregnant themselves. *Id.* at 682–85, 103 S.Ct. at 2630–32. The Court reasoned that "[t]he meaning of the first clause [of the Pregnancy Discrimination Act] is not limited by the specific language in the second clause, which explains the application of the general principle to women employees." [3] *Id.* at 679 n. 14, 103 S.Ct. at 2629 n. 14.

*Newport News*, therefore, establishes that Title VII's prohibitions cover discrimination against pregnant spouses. As Justice Stevens explained, discrimination against pregnant spouses is in essence discrimination against male employees because the sex of the spouse and the sex of the employee are always opposite. *Id.* at 684, 103 S.Ct. at 2631. Thus, even though Mr. Nicol is not a pregnant employee, he has standing to sue under Title VII because he was allegedly discharged and discriminated against on the basis of his own sex.

Also instructive here are the Title VII interracial relationship cases; Mr. Nicol's claim is analogous to claims of discrimination based on interracial relationships [4] and courts have consistently and sensibly recognized that discrimination on the basis of interracial marriage or association and discrimination on the basis of race are one and the same. *See Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 892 (11th Cir.1986) ("[W]here a plaintiff claims discrimination based upon an interracial marriage or association, he alleges, by definition, that he has been discriminated against because of his race."); *Reiter v. Center Consol. School Dist. No. 26–JT*, 618 F.Supp. 1458, 1460 (D.Colo.1985) (same); *Gresham v. Waffle House, Inc.*, 586 F.Supp. 1442, 1445 (N.D.Ga.1984) (same); *Whitney v. Greater New York Corp. of Seventh Day Adventists*, 401 F.Supp. 1363, 1366 (S.D.N.Y.1975) (same). In other words, a white employee who is discharged because his spouse is black is discriminated against on the basis of *his* race, even though the root animus for the discrimination is an anti-black prejudice. Similarly, the root animus here may be an anti-pregnancy prejudice, but the resulting discrimination is against Mr. Nicol's gender, for only males can have pregnant spouses.

---

**3.** The second clause of § 2000e(k) states:

> [A]nd women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e–2(h) of this title shall be interpreted to permit otherwise.
>
> 42 U.S.C. § 2000e(k).

**4.** The Supreme Court itself drew an analogy between persons able to sue under 42 U.S.C. § 1981 for discrimination on the basis of race and persons able to sue under Title VII for discrimination on the basis of sex. The Su-

preme Court stated that whites were protected against discrimination on the basis of race under § 1981, even though the main purpose of the bill was to grant further relief to blacks. Thus, the Supreme Court held in *Newport News* that, although the main purpose of the Pregnancy Discrimination Act was to protect pregnant women employees, male employees had a cause of action under the Act because they were discriminated against on the basis of their sex. *Newport News*, 462 U.S. at 680 & n. 18, 684, 103 S.Ct. at 2629 & n. 18, 2631. *See also McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 278–80, 289, 96 S.Ct. 2574, 2577–79, 2583, 49 L.Ed.2d 493 (1976) (also holding that Title VII prohibits discrimination against whites as well as blacks).

*Parr* illustrates well the relevance of the interracial relationship cases. There, a white male job applicant alleged that he had been denied employment by the defendant because of his marriage to a black woman. The Eleventh Circuit held that the plaintiff had been discriminated against because of his race. The Court found that the plaintiff had stated a claim as a white man who had been discriminated against because of his own race and the racial prejudices against white men who are married to black women. The root animus is, of course, an anti-black prejudice. This is analogous to Mr. Nicol's situation. Mr. Nicol has stated a claim as a married man who has allegedly been discriminated against because of his own sex and the prejudices of the defendant against men who are married to pregnant women. Thus, just as the plaintiff in *Parr* was discriminated against because of his race, Mr. Nicol has been discriminated against because of his sex.[5]

■ Defendants contend that Mr. Nicol is asserting third party standing on the basis of his wife's pregnancy and that such derivative standing is not contemplated under Title VII. This Court agrees; third party standing is not adequate for a *prima facie* Title VII claim. But this argument misses the point, for Mr. Nicol is asserting standing on the basis of his own sex. Thus, in recognizing Mr. Nicol's standing, this Court has not opened the door to other derivative suits under the Pregnancy Discrimination Act. For example, a discharged employee who is also a parent could not state a *prima facie* Title VII claim under the Act based on his or her daughter's pregnancy, because the status of a parent is not gender-based. Parents are both male and female. Thus, discharge because of a daughter's pregnancy would not be discrimination against the employee based on his or her sex. The result would be the same for a sibling or a neighbor.[6] The status of a husband, however, is distinctly gender-based. Therefore, Mr. Nicol was discriminated against on the basis of his sex if defendants indeed discharged him due to his wife's pregnancy.

For the reasons stated above, Mr. Nicol has standing to sue under Title VII, as amended by the Pregnancy Discrimination Act. Thus, the Court DENIES defendant's motion for partial summary judgment on the issue of Mr. Nicol's standing.

An appropriate order will be entered.

---

5. As another example, the *Whitney* court held that the plaintiff, a white woman, had standing to sue under Title VII because of her alleged discharge by her employer due to the employer's disapproval of her social relationship with a black man. The court found that:

"the plaintiff's race was as much a factor in the decision to fire her as that of her friend. Specifying as she does that she was discharged because she, a white woman, associated with a black, her complaint falls within the statutory language that she was 'discharge[d] ... because of [her] race.'"

*Whitney,* 401 F.Supp. at 1366. Thus, just as Whitney's complaint fell within the statutory language that she was "discharged because of [her] race," *Whitney,* 401 F.Supp. at 1366, Mr.

Nicol's complaint falls within the statutory language that he was discharged "on the basis of [his] sex," which includes, but is not limited to, "on the basis of pregnancy." 42 U.S.C. § 2000e(k).

6. This Court recognizes that third parties do have standing to sue under Title VII if they allege retaliatory discrimination. *See* 42 U.S.C. § 2000e–3. *See also Mandia v. Arco Chem. Co.,* 618 F.Supp. 1248, 1250 (W.D.Pa.1985); *Asklar v. Honeywell,* 95 F.R.D. 419, 424 (D.Conn.1982); *DeMedina v. Reinhardt,* 444 F.Supp. 573, 580 (D.D.C.1978). Retaliation is not at issue in this case, however, because Mr. Nicol did not state this claim for relief in the pleadings.